JONATHAN GOLDSMITH
Nevada Bar No. 11805
617 Hoover Avenue
Las Vegas, NV 89101
Telephone: (702) 818-4739
Facsimile: (702) 818-4218
jonathan@vegaslawsite.com
Attorney for Debtors

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| In re: | Case No. 13-17015 |
|---|---|
| Salvador Macedo<br>Maria R. Macedo | Chapter 11 |
| | Hearing Date:<br>Hearing Time: |
| Debtors | |

## DEBTOR'S AMENDED PLAN OF REORGANIZATION #5

## SUMMARY OF PLAN

The Plan, as proposed by the Debtor, is based on (1) re-amortizing and rescheduling the debt related to the first mortgage on two investment properties in Las Vegas, Nevada, based on the current market value of the property; (2) satisfaction in full of any priority debts, claims or expenses; and (3) a partial payment to unsecured creditors based on available monies pursuant to cash flow analysis.

## ARTICLE I
## DEFINITIONS

Unless the context otherwise requires, the following capitalized terms shall have the meanings indicated when used in this Plan and the accompanying Disclosure Statement, which meaning shall be equally applicable to both the regular and plural forms of such terms. Any term in this Plan that is not defined herein but that is used in the Title 11, United States Code (the "Code") shall have the meaning assigned to such term in the Code.

1

In re Macedo & Macedo
DIP Plan

1.1    "**Administrative Claim**" shall mean those claims entitled to priority, under the provisions of Section 507 of the Code, pursuant to a claim and allowed administrative expense priority under Section 503(b) of the Code.

1.2    "**Allowed Administrative Claim**" means an Administrative claim that is an Allowed Claim.

1.3    "**Allowed Claim**" as to all classes, hereinafter specified, shall mean a claim against a Debtors (a) for which a Proof of Claim has been timely filed with the Court by the Bar Date, or, with leave of the Court and without objection by any party-in-interest, late-filed and as to which neither the Debtors nor any party-in-interest files an objection or as to which the Claim is allowed by Final Order of the Court or (b) scheduled in the list of creditors, as may be amended, prepared and filed with the Court pursuant to Rule 1007(b) and not listed as disputed, contingent or unliquidated as to amount, as to which no objection to the allowance thereof has been interposed through closing of this case, or as to which any such objection has been determined by an order or judgment which is no longer subject to agreed or certiorari proceeding and as to which no appeal or certiorari proceeding is pending  This category includes all claims deemed unsecured pursuant to Section 506(a) of the Code.  When "Allowed Claim" is used in the context of a Secured Claim, the provisions of Section 506(b) of the Code shall also apply. This category includes all Claims deemed unsecured pursuant to Section 506(a) of the Code.  When "Allowed claim" is used the context of a Security Claim, the provisions of Section 506(b) of the Code shall also apply.

1.4    "**Allowed Interest**" means the Interest held by a shareholder of record of the Debtors as to which no objection to the allowance thereof has been interposed within the applicable period of limitations fixed in the Plan or the Confirmation Order, or as to which any such objection has been determined by an order .

1.5    "**Allowed Secured Claim**" shall mean an Allowed Claim secured by a lien, security interest or other encumbrance on the properties owned by the Debtors, which lien, security interests, or other encumbrance has been properly perfected as required by law, to the extent of the value of the property encumbered thereby.  That portion of such Claim exceeding the value of the security held thereof shall be an Unsecured Claim as defined below and determined pursuant to 11 US.C. Section 506(a).

1.6    "**Allowed Tax Claim**" means a Tax Claim that is an Allowed Claim.

1.7    "**Allowed Unsecured Claim**" shall mean an Unsecured Claim against Debtors (a) for which a Proof of Claim has been timely filed with the Court by the Bar Date or, with leave of the court and without objection by any party-in-interest and as to which neither the Debtors nor any party-in-interest files no objection or as to which the Claim is allowed by Final Order of the Court, or (b) scheduled in the list of creditors, as may be amended, prepared and filed with the court pursuant to Rule 1007(b) and not listed as disputed, contingent or unliquidated as to amount as to which no objection to the allowance thereof has been interposed through closing of this case, or as to which any such objection has been determined by an order or judgment which is no longer subject to appeal or certiorari proceeding and as to which no appearance or certiorari proceeding is pending.  This category includes all Claims deemed unsecured Pursuant to *Section 506(a) of the Code*.

1.8    "**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure and any amendments thereof.

In re Macedo & Macedo
DIP Plan

1.9     "**Bar Date**" shall mean the date fixed by the Court as the last date of filing all claims in this case, other than Administrative and priority claims or Rejection Claims.

1.10    "**Case**" shall mean this Chapter 11 case.

1.11    "**Claim**" shall mean any rights to payment from the Debtors as to the date of entry of the Order Confirming Plan whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal equitable, secured or unsecured or can be asserted by way of set-off Claim includes any right or cause of action based on a pre-petition monetary or non-monetary default, as defined in *Section 101(5) of the Code*.

1.12    "**Claimant**" shall mean the holder of a claim against the Debtors or the Estate.

1.13    "**Class**" shall refer to a category of holders of Claims or interests which are "substantially similar" as provided for in Section 1122 of the Code.

1.14    "**Code**" shall mean the United States Bankruptcy Code, being Title 11 of the United States Code, *11 U.S.C. Section 101 e*t *seq*., and any amendments thereof

1.15    "**Confirmation**" or "**Confirmation of the Plan**" shall mean entry by the Court of an Order Confirming this Plan at or after a hearing pursuant to *Section 1129 of the Code*.

1.16    1.16    "**Confirmation Date**" shall mean the date on which the Court enters an Order confirming the Plan.

1.17    "**Consummation**" means completion of all distributions to be made under the Plan.

1.18    "**Court**" shall mean the United States Bankruptcy Court for the District of Nevada, Las Vegas Division, presiding over these Chapter 11 reorganization cases, or any necessary court of competent jurisdiction.

1.19    "**Creditors**" means all entities with Claims against the Debtors or the Estate.

1.20    "**Debt**" shall mean any obligations of Debtors, alone, any obligation of Debtors and any other Person, to any Entity.

1.21    "**Debtor(s)**" shall mean joint Chapter 11 case of  Salvador Macedo and Maria Macedo.

1.22    "**Disbursing Agent**" shall mean Debtor(s).

1.23    "**Disclosure Statement**" means the Disclosure Statement as approved by order of the Court.

1.24    "**Disputed Claims**" means claims against the Debtors or the Estate as to which an objection has been filed after the Effective Date or such later date as may be fixed by the Court by the Debtors or the Reorganized Debtors and which objection has not been withdrawn or resolved by the entry of a Final Order.

1.25    "**Distributions**" means the property (including payments) required by the Plan to be provided to the holders of Allowed Claims.

In re Macedo & Macedo
DIP Plan

1.26 **"Effective Date of the Plan"** The effective date of this Plan is the eleventh business day following the date of the entry of the confirmation order. But if a stay of the confirmation order is in effect on that date, the effective date will the first business day after that date on which no stay of the confirmation order is in effect provided that the confirmation order has not been vacated.

1.27 **"Entity"** shall include persons, estate, trust, governmental unit and United States Trustee.

1.28 **"Estate"** means the bankruptcy estate created upon commencement of the Case pursuant to *Section 541(a) of the Code.*

1.29 **"Equity Interest Holders"** shall mean holders of the equity interests in the Debtors.

1.30 **"Final Confirmation"** shall mean that date which is eleven (11) days following the entry of the Order Confirming Plan, during which period of time no Notice of Appeal is filed, or if a Notice of Appeal is filed, during which period of time no Motion to Stay Pending Appeal is granted or supersedes bond is approved and filed.

1.31 **"Final Order"** means an order of the Court that has been entered and either,

> 1.31.1 The time for appeal from such entered Order has expired with no appeal having been timely filed; or
> 1.31.2 Any appeal that had been timely filed and has been dismissed or otherwise finally determined.

1.32 **"Impaired"** shall have the meaning provided in Section 1124 of the Code.

1.33 **"Insider"** shall mean any officer, director, shareholder of the Debtors and any relative of the shareholders of the Debtors.

1.34 **"Interests"** means the equity security interests in the Debtors.

1.35 **"Lien"** has the meaning provided by Section 101(37) of the Code.

1.36 **"Order Confirming Plan"** shall mean the Order of the Court determining that this Plan meets the requirements of Chapter 11 of the Code and is entitled to confirmation or filed for relief *pursuant to Section 2219 of the Code.*

1.37 **"Petition Date"** shall mean the date on which the Debtor filed this proceeding, which is February 22, 2011.

1.38 **"Plan"** shall mean this Plan of Reorganization in its present form or as it may be amended, modified or supplemented.

1.39 **"Priority Claim"** shall mean any claim entitled to priority pursuant to *Section 507(a) of the Code*, except for Tax Claims and claims incurred by the Debtors post-petition in the ordinary course of business.

1.40 **"Property of the Estate"** has the meaning provided by *Section 541 of the Code*.

In re Macedo & Macedo
DIP Plan

1.41    "**Pro Rata**" means proportionately so that the ratio of the amount of the distribution made on account of a particular Allowed claim to the Distributions made on account of all Allowed Claims of the Class in which the particular Allowed claim is included is the same as the ratio of the amount of such particular Allowed claim to the total amount of Allowed claims of the Class of which such particular Allowed Claim is included.

1.42    "**Rejection Claim**" shall mean any claim arising out of the rejection of a lease or executory contract pursuant to Section 363 of the code, which claim shall be treated as an Unsecured Claim.

1.43    "**Reorganized Debtors**" shall mean the entity which shall assume title to and control of the assets and liabilities upon confirmation as provided herein.

1.44    "**Secured Claim**" shall mean an Allowed Claim secured by a lien, security interest or other encumbrance on the properties owned by the Debtors, which lien security interest or other encumbrance has been properly perfected as required by law, to the extent of the value of the property encumbered thereby. That portion of such Claim emceeing the value of the security held thereof shall be an Unsecured Claim, as defined below and determined pursuant to 11 U.S.C. Section 506(a).

1.45    "**Substantial Consummation**" shall occur upon commencement of payments to creditors as provided in this Plan.

1.46    "**Tax Claims**" shall mean any claims entitled to priority under *Section 507(a)(8) of the Code* and shall include the claims of taxing authorities for taxes owed on the property retained by the Debtors under the Plan.

1.47    "**Unclaimed Property**" means any Distributions which are unclaimed following the date of distribution. Unclaimed Property shall include (a) checks (and the funds represented thereby) which have been return as undeliverable without a property forwarding address, (b) funds for checks which have not been paid, (c) checks (and the funds represented thereby) which were not mailed or delivered because of a proper address with which to mail or deliver such property, and (d) interest on cash constituting Unclaimed Property.

1.48    "**Unsecured Claim**" shall mean any Allowed Claim, whether or not liquidated or contingent other than a "Priority Claim, a Tax Claim, or a Secured Claim".

1.49    "**Wage Claim**" means a Claim entitled to priority treatment pursuant to *Section 507(a)(4) and/or (5) of the Code*.

## ARTICLE II
## CLASSIFICATION AND TREATMENT OF CLAIMS WITHOUT RIGHTS TO VOTE AND DESIGNATION AS TO IMPAIRMENT

**All claims are subject to being objected to. The Debtor reserves the right to request that any funds paid pursuant to this plan be held in trust, pending resolution of any claims or other litigation**.

This Plan constitutes the Chapter 11 plan of reorganization of the Debtor. All Claims against

1   the Debtor are placed in classes (each a "**Class**") as designated by Classes One through Six.  In

2   accordance with section 1123(a)(1) of the Bankruptcy Code, the Debtors have not classified

3   Administrative Claims and Priority Tax Claims.

4   **Classification of Claims**

5   **Class One Secured Claim of ~~Green Tree Servicing LLC~~ DITECH FINANCIAL, LLC**

6         (a)     *First-Lien Classification*: Class 2 consists of the Secured Claim of ~~**GREEN TREE SERVICING LLC**~~ **DITECH FINANCIAL, LLC** against the Debtor's property located at **4319 Garden Place, Las Vegas, NV 89107** which is secured by a lien against the Debtor's **investment property**.

      (b)     *Treatment*: Class 1 Creditor elected treatment under 11 U.S.C. 1111(b).  Ditech's claim is $194,831.25.  Debtors shall immediately tender to Ditech $10,000 in one lump sum payment due by October 23, 2015.  Upon receipt of the $10,000, the Claim shall be thereby reduced to the amount of $184,831.25 to be amortized over 30 years and paid in equal monthy installments commencing with the November 1, 2015 payment.  ~~The monthly payments of **$405.89** shall begin on the month following the effective date of the Plan and shall continue for a total term of 480 months.~~  The monthly payments shall be $513.42 per month. Secured Creditor shall receive a total of $~~194,831.25~~184,831.25 which equals the Proof of Claim after accounting for the $10,000 lump sum payment and is greater than the net present value of $51,000 based on 5.25% interest. Any property taxes and insurance related to this property shall be paid by the Debtors in a timely manner through an escrow account with Secured Creditor. The confirmation order approving the Plan shall set forth the values of each secured creditors first lien claim as of the effective date of the Plan.

      (c)     *Unsecured Portion of the Claim*.  Class 1 Creditor elected treatment under 11 U.S.C. 1111(b) so they will receive the total value of their claim.

      (d)     *Escrow*. Within 12 months of the Order confirming the Plan, Debtor shall cure any existing escrow shortage existing at the time of confirmation. Debtor will make ongoing escrow payments for taxes and insurance to the creditor as they come due~~.~~ together with the monthly mortgage payments commencing November 1, 2015 and continuing each month until the Note is paid in full.  As of October 19, 2015, the monthly escrow payment is $107.56.  This amount is subject to adjust periodically.

      (e)     *Voting*: Class 1 is an unimpaired class, and the holder of the Class 1 claim and, therefore, the creditor is not entitled to vote to accept or reject the Plan.

**Class Two Secured Claim of Everhome Mortgage**

      (a)     *First-Lien Classification*: Class 2 consists of the Secured Claim of **EVERHOME MORTGAGE** against the Debtor's property located at **5908 Idle Avenue, Las Vegas, NV 89107** which is secured by a lien against the Debtor's **investment property**.

(b) *Treatment*: The holder of the allowed Class 2 Secured Claim, First Mortgage, shall be re-amortized and rescheduled based on the property value of **$150,000.00**. The interest rate shall be **5.25%** over a 30 year fixed scheduled.  The monthly payments of **$828.00** shall begin on the month following the effective date of the Plan and shall continue for a total term of 360 months. Any property taxes and insurance related to this property shall be paid by the Debtors in a timely manner through an escrow account with Secured Creditor. The confirmation order approving the Plan shall set forth the values of each secured creditors first lien claim as of the effective date of the Plan.

(c) *Unsecured Portion of the Claim*.  Any amount of a Class 2 claim that is deemed to be unsecured shall be converted to an unsecured claim and paid pro rata with general unsecured creditors.

(d) *Escrow*. Within 12 months of the Order confirming the Plan, Debtor shall cure any existing escrow shortage existing at the time of confirmation. Debtor will make ongoing escrow payments to the creditor as they come due.

(e) *Voting*: Class 2 is an impaired class, and the holder of the Class 2 claim and, therefore, the creditor is entitled to vote to accept or reject the Plan.

**Class Three General Unsecured Claims**

(a) *Classification:* Class 3 consists of General Unsecured Claims against the Debtors, which includes the unsecured portion of the Debtor's first and second lien holders' claims.

(b) *Treatment:* All unsecured creditors having filed proofs of claims, or deemed to have filed proofs of claims, that are not disputed, contingent or unliquidated, shall be paid, 166.66 every quarter,         commencing of the effective date of the plan, and continuing for 60 months or complete satisfaction of all valid claims, whichever is earlier.

(b) Voting: Class 3 is an Impaired Class, and are entitled to vote to accept or reject the Plan.

### ARTICLE III
### TREATMENT OF UNCLASSIFIED CLAIMS WITHOUT RIGHTS TO VOTE

**UNCLASSIFIED CLAIMANTS – ADMIISTRATIVE EXPENSE CLAIMS**.  These claimants shall be comprised of the quarterly fees due to the United States Trustee and any fees and costs for Professionals.  The claims of the United States Trustee for any quarterly fee arrearages shall be paid in full on or before the Effective Date of the Plan. The claims of Professionals shall be paid upon approval of the Court, and may be paid, upon the request of the Professional, from monies otherwise distributed by the disbursement agent.

7

In re Macedo & Macedo
DIP Plan

## ARTICLE IV
## IMPLEMENTATION OF PLAN DISBURSMENTS

The Debtors may utilize the services of a disbursement agent (the "Disbursement Agent"). Except as otherwise provided in the Plan, upon confirmation the Debtors shall begin making quarterly payments of $166.66 to the Disbursement Agent under the Plan. The Disbursement Agent shall begin as soon as practical making pro rata payments to the Debtor's unsecured creditors holding allowed claims on a quarterly basis, until such claims are paid as set forth in the Plan, and as possibly adjusted by administrative expenses.

## ARTICLE V
## DISHCHARGE OF DEBTOR AND EFFECT OF CONFIRMATION

Unless after notice and a hearing, and the Court orders otherwise for cause, confirmation of this Plan does not discharge any debt provided for in this Plan until the Court grants a discharge on completion of all payments under this Plan.

**Source of Payments**. Payments and distributions under the Plan will be funded by the Debtors, based upon her (a) projected monthly rental income and (b) personal income. The Debtor's monthly Plan payment shall be ~~$1,165.89~~ $1,273.42 to secured creditors, and $55.55 to unsecured creditors.

## ARTICLE VI
## EVENTS OF DEFAULT AND ACCELLERATION

**EVENTS OF DEFAULT:** The occurrence of any of the following shall constitute an event of default under the Plan.

**(a) FAILURE TO MAKE PAYMENTS:** Failure on the part of the reorganized debtors to pay fully within thirty (30) days when due and payment required to be made in respect of the Plan on or after the Consummation Date;

**(b) FAILURE TO PERFORM NEGATIVE COVENANTS:** Failure on the part of the debtors to perform or observe any negative term or provision as set forth in Article IV of the Plan,

8

In re Macedo & Macedo
DIP Plan

1 which failure remains uncured for a period of thirty days after notice of such default;

2 **(c) FAILURE TO PERFORM OTHER TERMS AND PROVISIONS:** Failure on the

3 part of the debtors to perform or observe any other term or provision of the Plan other than those set

4 forth in Paragraphs (a) and (b) above of this section, which failure remains uncured for a period of

5 sixty (60) days after notice of such default;

6 **(d) VOLUNTARY BANKRUPTCY CASES, ETC.:** Debtors shall generally not pay her debts as

7 they become due or shall admit in writing her inability to pay her debts, or shall make a general

8 assignment for the benefit of creditors; or debtors shall commence any case proceeding or other

9 actions seeking to have an order for relief entered on her behalf as debtors or to adjudicate itself as

10 bankrupt or insolvent, or seeking reorganization, arrangement, adjustment, liquidation, dissolution or

11 composition of any of her debts under the Code or any other law relating to bankruptcy, insolvency,

12 reorganization or relief of debtors or seeking appointment of a receiver, trustee, custodian or other

13 similar official for it's or for any substantial part of her property;

14 **(e) INVOLUNTARY BANKRUPTCY CASES:** Any case, proceeding or other action against

15 debtors shall commence seeking to have an order for relief entered against it as debtor r or to

16 adjudicate it as bankrupt or insolvent, or composition of its debts under the Code or any other law

17 relating bankruptcy, insolvency, reorganization or relief of debtors, or seeking appointment of

18 receiver, trustee, custodian or other official for it or for all or any substantial part of its property, and

19 in such case, proceeding or other action (i) results in such an adjudication, the entry of such an order

20 for relief or such appointment, which is not fully stated, (ii) shall not be contested by debtors through

21 appropriate proceedings procedures within twenty days of commencement thereof or shall be

22 acquiesced in by debtors, or (iii) shall remain undismissed for a period of One Hundred Eighty (180)

23 days.

## ARTICLE VII

In re Macedo & Macedo
DIP Plan

**RETENTION OF JURISDICTION**

The Bankruptcy Court shall retain jurisdiction of this case until the last day of the first full fiscal quarter following the quarter in which the effective date falls at which time an order of the Bankruptcy Court shall be entered concluding and terminating this case effective on said day unless the debtors or any interested party shall be prior to that date move the court to retain jurisdiction for a longer period of time.

During such time as the Bankruptcy Court retains jurisdiction, said jurisdiction will be deemed to include jurisdiction to hear and determine all claims against the debtors or the bankruptcy estate and to enforce all causes of action that may be owned by the debtors or the bankruptcy estate and to contest any claims and to hear the objection to any claims posed by the debtors or other interested party.

**ARTICLE VIII**
**PROCEDURES FOR RESOLVING DISPUTED CLAIMES**

Objections to Claims must be filed with the Bankruptcy Court and served upon the holders of each of the Claims to which objections are made on or before thirty days after the Effective Date.

Notwithstanding any other provision of this Plan, Distributions shall not be made with respect to Disputed Claims unless such Disputed Claim has been resolved and such Disputed Claim has become an Allowed Claim no later than six months after the Effective Date of the Plan.

Unless otherwise provided in a Final Order of the Bankruptcy Court, any Claim on account of which a proof of claim is required by Bankruptcy Rule 3003(c)(2) and which is filed after the Bar Date shall be deemed disallowed. The holder of a Claim which is disallowed shall not receive any Distribution on account of such Claim.

**ARTICLE IX**
**PROVISIONS FOR ASSUMPTION OF EXECUTORY CONTRACTS**

All contracts which exist between debtors and any individual entity whether such

contracts be in writing or oral, which have not heretofore been rejected or heretofore been approved by Orders of this Court are hereby specifically assumed.

# ARTICLE X
# MISCELLANEOUS

**1. HEADINGS:** The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the meanings hereof.

**2. NOTICES:** All notices required or permitted to be made in accordance with the Plan shall be in writing and shall be transmitted by facsimile transmission to (702) 818-4218, by e-mail to jonathan@vegaslawsite.com, and mailed by registered or certified mail, return receipt requested:

A. If to the debtors, to Jonathan B. Goldsmith, Esq., 617 Hoover Avenue, Las Vegas, 89101.

B. If to a holder of an allowed claim or allowed interest, at the address set forth in its' allowed Proof of Claim or proof of interest or, if none, at its' address set forth in the schedule prepared and filed with the Court; and,

C. Notice to the debtors shall be deemed given when received. Notice to any holder shall be deemed given when delivered or mailed. Any person may change the address at which it is to receive notices under the Plan by sending written notice pursuant to the provisions of this section to the person or entity to be charged with the knowledge of such change.

**3. RESERVATION OF RIGHTS:** Neither the filing of this Plan nor the Disclosure Statement, nor any statement or provision contained herein or therein, nor the taking by any creditor of an action with respect to this Plan: (a) Shall be or be deemed an admission against interest; nor, (b) Prior to the Confirmation Date, be or be deemed to be a waiver of any rights which any creditor might have against the debtors or any of their properties specifically reserved. In the event substantial consummation of the Plan does not occur, neither this Plan nor any statement

In re Macedo & Macedo
DIP Plan

contained herein or in the Disclosure Statement, may be used or relief upon in any manner in any suit, action, proceeding or controversy within or outside of the Reorganization Case involving debtors.

**4. PAYMENT OF STATUTORY FEES:** All fees payable pursuant to § 1930 of Title 28 of the United States Code, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid on or before the Effective Date.

**5. GOVERNING LAW:** Except to the extent that the Bankruptcy Code is applicable, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the internal laws of the State of Nevada.

**6. SUCCESSORS AND ASSIGNS:** The rights and obligations of any person named or referred to in this Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of such person.

**7. SEVERABILITY:** Wherever possible, each provision of this Plan shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Plan shall be prohibited by or invalid under applicable law, such provision shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Plan. Furthermore, if the Bankruptcy Court will not confirm this Plan because one or more provisions hereof are determined to be prohibited or invalid under applicable law, the Proponents may seek permission of the Bankruptcy Court to amend this Plan by deleting the offending provision.

**8. PRESERVATION OF RIGHTS.** Notwithstanding any provision of this Plan, the Debtors specifically preserves her respective rights to object, complain against, or otherwise affect the claims that are part of this Plan. Debtors must commence the exercise of its rights no later than 60 days after the Effective Date of the Plan.

Dated: October 19, 2015.

/s/ Salvador Macedo
/s/ Maria Macedo
Debtors in Possession

/s/ Jonathan B. Goldsmith
Attorney for the Debtors in Possession

In re Macedo & Macedo
DIP Plan